IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WHITE ROSEBAY SHIPPING S.A. | § | |
| | § | |
| v. | § | C.A. NO. C-12-096 |
| | § | |
| HNA GROUP CO., LTD., ET AL. | § | |

**OPINION GRANTING PLAINTIFF'S MOTION TO UNSEAL
DOCUMENTS AND DENYING DEFENDANTS' MOTION TO STRIKE**

This is an admiralty action filed pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration by Plaintiff White Rosebay Shipping, S.A ("White Rosebay"). (D.E. 1). Pending is a motion to unseal documents filed by Plaintiff. (D.E. 57). Defendants HNA Group Co., Ltd. ("HNA"), Hong Kong Chain Glory Ltd. ("Chain Glory"), and Shanghai Grand China Shipping Development Co. ("Grand China"),[1] have filed a response in opposition. (D.E. 60). In addition, Defendants have filed a corresponding motion to strike. (D.E. 61). For the following reasons, Plaintiff's motion to unseal is hereby GRANTED, and Defendants' motion to strike is hereby DENIED.

**I. BACKGROUND**

On July 20, 2010, Defendant Chain Glory entered into an agreement with Plaintiff to time charter its vessel, the M/V Fortune Plum. (D.E. 1, at 3). The agreement was guaranteed by Defendant Grand China. Id. Both Chain Glory and Grand China are owned by an HNA subsidiary, non-party Grand China Logistics Holding (Group) Company Limited ("GC Logistics"), which serves as the holding company through which HNA operates its shipping

---

[1] Grand China is erroneously named in the complaint as Grand China Shipping Development Co. a/k/a Shanghai Grand China Shipping Development Co. (D.E. 61).

business. Id. at 2; (D.E. 1-4, at 2). Pursuant to this agreement, Chain Glory was obligated to make charter hire payments each month at the rate of $17,700 per day, beginning on July 23, 2010 when the vessel was delivered to it. Id. However, in April 2011, Chain Glory began to default on the contract, failing to make installment payments on time or in full. Id. By September 2011, it owed a total of $1,050,711 in back charter hire payments. Id. at 3-4. Shortly thereafter, it stopped making payments altogether. Id. On November 14, 2011, construing Chain Glory's failure to make payments as a constructive repudiation of the charter contract, Plaintiff withdrew the M/V Fortune Plum from Chain Glory's service. Id.

On February 12, 2012, Plaintiff commenced an arbitration proceeding against Chain Glory in London pursuant to the terms of the charter contract. Id. at 5-6; (D.E. 1-2). In order to obtain security for that proceeding, it instituted this action against Chain Glory on March 28, 2012, claiming that Chain Glory and its guarantor, Grand China, breached the charter contract. (D.E. 1, at 2-3). Plaintiff also seeks to hold HNA, the parent company of Chain Glory and Grand China, as well as two other subsidiaries, OHT and OHT Osprey, liable for breach of contract on the basis that an alter ego relationship existed between each of these corporations. Id. at 10-12. Plaintiff simultaneously submitted a motion to seize the M/V Osprey, which was then within this Court's territorial jurisdiction.[2] (D.E. 4). This motion was granted on March 29, 2012, and the vessel was seized. (D.E. 8). OHT posted bond on March 30, 2012, (D.E. 10), and Plaintiff consented to the release of the vessel. (D.E. 22).

Defendants OHT and OHT Osprey filed their answers on April 30, 2012. (D.E. 24; D.E. 25; D.E. 26). On July 20, 2012, they submitted a motion to dismiss and vacate attachment in

---

[2] OHT Osprey is the sole owner of the M/V Osprey, and OHT is the sole owner of OHT Osprey. (D.E. 31, at 1).

accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rule E(4)(f).  (D.E. 31).  On July 26, 2012, Defendants HNA, Chain Glory, and Grand China also filed a motion to vacate attachment pursuant to Rule E(4)(f).  (D.E. 33). Plaintiff filed a response in opposition to Defendants' motion to vacate, which was filed under seal pending the London arbitration panel's decision regarding the confidentiality of three emails attached as exhibits.  (D.E. 46).  The emails consist of one redacted email dated March 21, 2012, from Chris Grieveson of Wikborg Rein to Max Cross of Ince & Co. ("March Email"); as well as emails dated April 13 and April 16, 2012 from Wikborg Rein to the London Tribunal and Ince & Co. ("April Emails").  (D.E. 46-1).

On October 12, 2012, the London Tribunal entered a Second Final Partial Award in which it ruled on the confidentiality of the sealed documents.  (D.E. 58, at 4).  It found that the emails were not protected by the arbitration agreement contained in the charter because, pursuant to an exception to arbitration privacy, the documents were found to be reasonably necessary for Plaintiff's use in the attachment proceedings.  Id. at 11-13.

On November 14, 2012, Plaintiff filed a motion to unseal the documents.  (D.E. 57).  On November 28, 2012, Defendants filed a response in opposition, (D.E. 60), as well as a corresponding motion to strike.  (D.E. 61).

## II.  DISCUSSION

**A.    Plaintiff's Motion To Unseal Is Granted.**

Plaintiff urges that the documents in question be unsealed in light of the London Tribunal's determination that their disclosure did not violate arbitration confidentiality.  (D.E. 57, at 1).  Defendants do not contest the Tribunal's ruling, nor do they oppose the unsealing of

the two April emails.  (D.E. 60, at 2).  However, they argue that the March email should not be unsealed because it should be struck from the record as an inadmissible settlement negotiation pursuant to Rule 408 of the Federal Rules of Evidence.  Id.

  While there is a common law right to inspect and copy judicial records, it is not absolute.  S.E.C. v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir. 1993) (citing Nixon v. Warner Commc'n, Inc., 435 U.S. 589, 598 (1978); Belo Broad. Corp. v. Clark, 654 F.2d 423, 430 (5th Cir. 1981)).  Rather, as the Fifth Circuit has explained, "the common law merely establishes a presumption of public access to judicial records."  Van Waeyenberghe, 990 F.2d at 848 (citing Littlejohn v. BIC Corp., 851 F.2d 673, 678 (3d Cir. 1988)); see also Nixon, 435 U.S. at 597; Belo Broad. Corp., 654 F.2d at 429.  Nevertheless, a "'district court's discretion to seal the record of judicial proceedings is to be exercised charily.'"  Van Waeyenberghe, 990 F.2d at 848 (quoting Fed. Sav. & Loan Ins. Corp. v. Blain, 808 F.2d 395, 399 (5th Cir. 1987)).  When determining whether to seal or unseal judicial records, the court must weigh the public's right of access against any countervailing interests that favor nondisclosure.  Id. (citations omitted).

  In light of the London Tribunal's finding that the emails were not protected by arbitration confidentiality, the documents should be unsealed.  The sole justification for sealing the emails was the uncertainty regarding whether their disclosure violated the arbitration agreement.  (D.E. 44).  Because that justification no longer applies, the documents should be disclosed absent some other reason to maintain nondisclosure.  See In re Cendant Corp., 260 F.3d 183, 196 (3d Cir. 2001) ("Even if a sealing order was proper at the time when it was initially imposed, [it] must be lifted at the earliest possible moment when the reasons for sealing no longer obtain.").  Defendants have proffered no such reason.  While they argue that the March email contains

inadmissible evidence of settlement negotiations, the question of inadmissibility has no bearing on whether the document should remain sealed.[3]  Therefore, Plaintiff's motion to unseal is hereby GRANTED.

**B.     Defendants' Motion To Strike Is Denied.**

Defendants move to strike the March email on the basis that it is an inadmissible settlement negotiation pursuant to Rule 408 of the Federal Rules of Evidence.  (D.E. 60, at 2; D.E. 61, at 2-3).  In the alternative, they move that if the March email is unsealed, the redacted version submitted by Plaintiff should be substituted by the full, unredacted version that omits only the settlement amount.  Id.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 408 prohibits admitting evidence regarding settlement offers and negotiations "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  However, such evidence may be admissible for other purposes.  Fed. R. Evid. 408(b).

Assuming the March email constitutes a settlement negotiation, it is nevertheless admissible pursuant to Rule 408(b) because Plaintiff offers it to establish Defendants' control for the purposes of proving its alter ego theory, as opposed to proving ultimate liability or to impeach.  See Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1351 (11th Cir.

---

[3] The sealed emails were reviewed upon consideration of Defendant OHT and OHT Osprey's motion to dismiss.  However, because the documents were not relevant to the question of whether Plaintiff had established fraud for the purposes of its alter ego theory, they did not affect the recommendation that the district court grant dismissal.  Accordingly, the outcome of this Court's December 5, 2012 Memorandum and Recommendation on Defendants' Motion to Dismiss and Motion to Vacate Attachment would be the same regardless of the admissibility of the documents.

2011) (finding no error when district court admitted evidence of settlement discussion to determine who were parties to an agreement and whether there was a legal distinction between certain individuals and corporations); Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co., No. CIV-05-445-C, 2009 WL 290950, at *3 (W.D. Ok. Feb. 5, 2009) (unpublished) ("The Court finds that evidence of the settlement ... should be admitted on the issue of Plaintiffs' alter ego theory of liability"). Accordingly, Defendants' motion to strike is hereby DENIED.

To the extent Defendants seek to substitute Plaintiff's redacted version of the email with a fuller version into the record, it is unclear why it wishes to do so. It indicates that when viewed as a whole, the email is clearly a settlement negotiation and therefore even *more* inadmissible than when redacted. (D.E. 61, at 3). Nonetheless, this fuller version has been included within the record. (D.E. 61, Ex. A). Accordingly, Defendants' motion is hereby DENIED as moot.

## III.  CONCLUSION

Because there is no reason to maintain the seal on the documents that were filed as part of Plaintiff's response in opposition to Defendants' motion to vacate, (D.E. 46-1), Plaintiff's motion to unseal, (D.E. 57), is hereby GRANTED.  In addition, because the March email is not barred by Rule 408, Defendants' motion to strike, (D.E. 61), is hereby DENIED as moot. Finally, Defendants' request to substitute Plaintiff's exhibit with an unredacted version of the email is hereby DENIED as moot.

ORDERED this 18th day of December 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE