**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **WHITE ROSEBAY SHIPPING S.A.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:12-CV-00096** |
| | § | |
| **HNA GROUP CO. LTD.,** | § | **ADMIRALTY – FED. R. CIV. P. 9(h)** |
| **HONG KONG CHAIN GLORY LTD.,** | § | |
| **GRAND CHINA SHIPPING** | § | |
| **DEVELOPMENT CO.,** | § | |
| **OFFSHORE HEAVY TRANSPORT AS,** | § | |
| and **OHT OSPREY AS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER DENYING MOTION TO DISMISS AND MOTIONS TO VACATE

Before the Court is Defendants Offshore Heavy Transport AS and OHT Osprey AS's Motion to Dismiss and Motion to Vacate Attachment (D.E. 31) and Defendants HNA Group Co. Ltd., Hong Kong Chain Glory Ltd., and Shanghai Grand China Shipping Development Co. Ltd.'s Motion to Vacate Attachment (D.E. 33). For the reasons set forth below, Defendants' motions are DENIED.

This case arises out of a dispute over a time charter party agreement (the charter agreement) between Plaintiff White Rosebay Shipping S.A. (Plaintiff) and Defendant Hong Kong Chain Glory Ltd. (Chain Glory) with regard to the vessel M/V Fortune Plum. Plaintiff has commenced arbitration proceedings against Chain Glory before a London arbitration panel alleging breach and repudiation of the charter agreement, and it plans on commencing an action in the London High Court against Grand China Shipping Development Co. (Grand China Shipping) who served as the guarantor of the charter agreement. (Compl. ¶¶ 22–23.) Plaintiff

has initiated the present ancillary proceeding against Defendants Chain Glory and Grand China Shipping, as well as a primary proceeding against Defendants HNA Group Co. Ltd. (HNA), Offshore Heavy Transport AS (OHT), and OHT Osprey AS (OHT Osprey) in order to attach the heavy lift motor vessel M/V Osprey as security for its claims for breach of the charter agreement in the London proceedings. (Compl. ¶¶ 10, 24.)

The vessel M/V Osprey sailed into the Southern District of Texas on or about March 28, 2012, berthing at Kiewit Offshore Service, Ltd. in Ingleside, Texas. (Compl. ¶ 8.)  That same day, Plaintiff filed a motion for writ of maritime attachment pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (D.E. 4.) The following day, the Court held a hearing, after which, it entered an Order for the issuance of process of maritime attachment and garnishment. (D.E. 8.)  Defendants then filed their motions to dismiss the original verified complaint and vacate attachment, which are presently before the Court. (D.E. 31, 33.)  On December 5, 2012, United States Magistrate Judge Brian L. Owsley issued a memorandum and recommendation. (D.E. 62.)  The parties recorded numerous objections challenging nearly every part of the Magistrate Judge's recommendation. (D.E. 64, 65, 66, 67.)  Accordingly, the Court reviews the motions *de novo*.

## MOTION TO DISMISS

Defendants OHT and OHT Osprey argue that Plaintiff's original verified complaint fails to state a claim for which relief may be granted. (D.E. 31 at 3–6.)  Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny, a complaint must allege sufficient facts to give rise to a plausible entitlement to relief, as opposed to a mere possibility of relief.  The Court finds that Plaintiff's allegations set forth a plausible claim for piercing the corporate veils of HNA and its subsidiaries.

2

In *Bridas v. Gov't of Turkmenistan*, 447 F.3d 411, 416–17 (5th Cir. 2006), the Fifth Circuit concluded that to establish an alter ego claim, a plaintiff must demonstrate (1) that an abuse of the corporate form occurred, and (2) that this abuse promoted a fraud or injustice that injured the plaintiff. Plaintiff's general theory of liability is that HNA, in conjunction with and through its holding company Grand China Logistics Holding Group Company Limited (GCL), dominates its subsidiaries as part of a strategic plan to isolate liabilities from assets with corporate walls so that it can place risk-free bets on the shipping industry, and that this systematic abuse of the corporate form has worked an injustice on Plaintiff and others in the shipping industry.

Specifically, Plaintiff alleges that Chain Glory, Grand China Shipping, OHT, and OHT Osprey were completely dominated and controlled by HNA; that HNA set up Chain Glory and Grand China Shipping to bet on future increases in shipping rates following their precipitous decline in the wake of the 2009 global recession; that Chain Glory and Grand China Shipping were intentionally undercapitalized, such that, if HNA's bet did not pay off, the companies could be left to founder with little risk of loss to the parent; that HNA intentionally withdrew support from Chain Glory and Grand China Shipping when they proved unprofitable; that HNA intentionally perpetuated an image of financial strength and backing for its subsidiaries; that HNA held itself out in its prospectus as controlling or owning ships and other assets belonging to its dominated subsidiaries, such as OHT; that HNA used its control to direct profits and assets away from subsidiaries operating in risky or unprofitable markets to subsidiaries like OHT, operating in safer and more profitable markets; that the undercapitalization of Chain Glory and Grand China Shipping was intentionally hidden from Plaintiff; and that HNA intentionally

3

misrepresented the strength and financial backing of Chain Glory and Grand China Shipping in order to induce Plaintiff into signing the charter agreement. (Compl. ¶¶ 28–77.)

The Court agrees with Defendants that a showing of domination, control, under-capitalization, or other abuse of the corporate form, by itself, is not sufficient to establish alter ego liability. Before the Court may exercise its equitable powers, there must be some showing that the abuse of the corporate form led to some fraud, injustice, or fundamental unfairness. *See Cunningham v. Rendezvous, Inc.*, 699 F.2d 676, 680 (4th Cir. 1983) (applying federal law on veil-piercing). The Court finds that the Complaint sets forth sufficient factual allegations of domination, undercapitalization, and fraud or injustice to establish a plausible claim for relief and permit the piercing of HNA's and its subsidiaries' corporate veils. Accordingly, Defendants' motion to dismiss (D.E. 31) is DENIED.

## MOTIONS TO VACATE

### A.     Prima Facie Admiralty Claim

Defendants OHT and OHT Osprey argue that the attachment should be vacated because Plaintiff failed to carry its burden under Rules B and E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (D.E. 31 at 6–11.) Under the Supplemental Rules, to support the attachment of Defendants' vessel, Plaintiff must show (1) that Plaintiff has a valid prima facie admiralty claim, (2) that Defendant cannot be found within the Southern District of Texas, (3) that Defendant's property may be found in the District, and (4) that there is no statutory or maritime bar to attachment. *Naftomar Shipping and Trading Co. v. KMA Int'l S.A.*, Civ. A. No. V-11-2, 2011 WL 888951, at *2 (S.D. Tex. Mar. 10, 2011). Defendants argue that Plaintiff failed to state a valid prima facie claim against Defendants. (D.E. 31 at 8.)

While similar, a Rule 12(c) motion to dismiss and a Rule E(4)(f) motion to vacate are not precise equivalents. *Vitol v. Capri Marine, Ltd.*, Civ. A. No. MJG-09-3430, 2011 WL 5577618 at *2 (D. Md. Aug. 22, 2011); *Artic Ocean Int'l v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 50 (S.D.N.Y. 2009).   Consequently, although the Court found above that Plaintiff's factual allegations state a plausible maritime attachment claim, the Court must additionally consider whether the complaint sets forth a valid prima facie admiralty claim.   This can be a slightly more onerous standard. *See Vitol*, 2011 WL 5577618, at *2 ("it is at least theoretically possible that a Complaint adequate to withstand a Rule 12(b)(6) motion may, nevertheless, not be adequate to avoid the vacatur of an attachment").

Rule E(4)(f) also permits the Court to look beyond the complaint, consider evidentiary submissions by the parties, and to hold a hearing, if requested. *See Naftomar*, 2011 WL 888951, at *2–3; *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) (concluding that court "may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing").   In the case at hand, however, Defendants OHT and OHT Osprey did not request a post-attachment hearing, and their motion to vacate argues only that the complaint fails to state a valid prima facie admiralty claim as it lacks specific factual allegations supporting an alter ego claim against them. (D.E. 31 at 10.)   Accordingly, the Court will limit its analysis to the allegations of the complaint.

"To state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient." *Naftomar*, 2011 WL 888951, at *5 (quoting *Emeraldian Ltd. Partnership v. Wellmix Shipping Ltd.*, No. 08 Civ. 2991(RJH), 2009 WL 3076094, at *3 (S.D.N.Y. Sept. 28, 2009)).   Defendants argue that Plaintiff's allegations are conclusory and that the complaint lacks specific facts

demonstrating either complete control over OHT and OHT Osprey by HNA or how this control was used to commit a fraud or injustice. (D.E. 31 at 8–11.)  Furthermore, Defendants argue that Plaintiff's complaint does not meet the heightened pleading requirements for fraud under FED. R. CIV. P. 9(b). (*Id.*)

The Fifth Circuit has set forth a non-exhaustive list of factors that may be considered when determining whether one company dominates and controls another for alter ego purposes. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 n. 2 (5th Cir. 2000).  Relevant here are the following factors: (1) common stock ownership between the parent and subsidiary; (2) common officers and directors; (3) parent financing the subsidiary; (4) subsidiary operated with inadequate capital; (5) parent pays expenses for the subsidiary; (6) subsidiary receives all its business through the parent; (7) parent uses the subsidiary's property as its own; (8) daily operations of the two corporations are not kept separate; and (9) failure to observe corporate formalities. *Id.*

It can be reasonably inferred from the factual allegations of the complaint that HNA holds a 60% stock ownership of OHT; that there is commonality of at least two directors on the boards of HNA and OHT; that the Chairman of OHT's Board of Directors is the Executive Chairman and President of GCL's Board of Directors; that the other new member of OHT's Board is Vice Chairman of HNA's Board of Directors; that HNA holds itself and its subsidiaries out to the public as a single, cohesive business group; that this group functions as a single business enterprise; that members of the group commonly guarantee the financial obligations of other group members; that obligations incurred by HNA's subsidiaries for which the group implied financial backing are frequently repudiated and support withdrawn, leaving creditors little or no recourse; that HNA routinely commingles its business assets and funds with that of its

subsidiaries; and that HNA held itself out as owning and/or controlling ships, aircraft, and other assets that in actuality were held by its subsidiaries. (Compl. ¶¶ 28–77.)

The Court concludes that there are sufficient factual allegations from which one can reasonably infer an abuse of the corporate form by HNA.  With regard to OHT and OHT Osprey, specifically, one can reasonably infer from the complaint that HNA held a controlling interest in OHT, that it dominated OHT's board, that it controlled OHT's assets, that there was a commingling of funds, and that HNA directed OHT's business in a manner that was advantageous to the parent.  More generally, the complaint permits a strong inference of a pattern and practice of domination, control, intentional undercapitalization, a shifting of assets, and other corporate abuses throughout the HNA group of companies.

Furthermore, the Court concludes that one can reasonably infer from the allegations of the complaint that these corporate abuses resulted in a fraud or injustice to Plaintiff.  While the mere prospect of an unfulfilled judgment is not sufficient to pierce the corporate veil, neither is it necessary that Plaintiff plead actual fraud with particularity, especially at this early stage of the proceedings.  Defendants argue that to support its alter ego claim, Plaintiff was required to meet the pleading requirements of FED. R. CIV. P. 9(b). (D.E. 31 at 10.)  In maritime cases, however, federal common law does not require a showing of actual fraud to pierce the corporate veil. *See, e.g.*, *Cunningham*, 699 F.2d at 680 ("must present an element of injustice or fundamental unfairness"); *Talen's Landing, Inc. v. M/V Venture II*, 656 F.2d 1157, (5th Cir. 1981) (concluding that veil may be pierced to prevent "manifest injustice to third parties").

In sum, the Court concludes that the complaint provides reasonable grounds for piercing the corporate veil of HNA and its subsidiaries OHT and OHT Osprey.  Rule E(4)(f) requires the Court to make a preliminary determination as to whether there are reasonable grounds to proceed

with the attachment, but this procedure is not intended to definitively resolve the dispute between the parties. *N. of England Protecting and Indemnity Assoc.* v. M/V NARA, Civ. No. 99-0464, 1999 WL 33116416, at *2 (E.D. La. Feb. 26, 1999).   Defendants do not rely on any controverting evidence in this case, but simply argue that Plaintiff's complaint failed to set forth a prima facie case of alter ego liability.   The Court concludes that, at this stage of the proceedings, Plaintiff has pled sufficient facts to maintain the maritime attachment.   Plaintiff, however, continues to carry the burden going forward, and, "if, at any point, a plaintiff in a maritime attachment case ceases to be able to satisfy the requirements of Rule B, a district court may—and indeed *should*—revisit and vacate any orders of attachment." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 212 (2d Cir. 2010).

## B.    Imputing Alter Ego's Jurisdictional Contacts to Defendants

Next, all Defendants argue that the attachment should be vacated because, six days before the filing of Plaintiff's complaint in this matter, GCL (who is not a defendant) registered to do business in Texas and designated a Texas agent for service of process.   Defendants argue that if the Court finds Plaintiff's allegations sufficient to establish an alter ego relationship between Defendants, then GCL is also Defendants' alter ego.   Consequently, Defendants claim that, at the time of the attachment, GCL and its corporate alter egos could be found in the Southern District of Texas, and this precluded the Court from exercising its maritime jurisdiction and ordering the attachment of the M/V Osprey under the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (D.E. 31 at 11–13; D.E. 33 at 4–7.)

"[A] defendant cannot be found within the district for purposes of Rule B if it is not present in the district at the time the complaint is filed.   A defendant is present in the district if 1) the defendant can be found within the district in terms of jurisdiction, and 2) the defendant can be found within the district for service of process." *Heidmar, Inc. v Anomina Ravennate Di*

*Armanento Sp. A. of Ravenna*, 132 F.3d 264, 268 (5th Cir. 1998).  For personal jurisdiction over a non-resident defendant, the Fifth Circuit requires "1) that defendant has 'minimum contacts with the forum state; and 2) the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.' " *Brown v. Slenker*, 220 F.3d 411, 417 (5th Cir. 2000).  For service of process, Rule B(1) does not permit statewide service of process, but requires that the defendant have an agent present within the *federal district. LaBanca v. Ostermunchner*, 664 F.2d 65, 68 (5th Cir. 1981).

The complaint and the verification and affidavit in support of Rule B attachment indicate that Defendants are foreign corporations and that none of the Defendants could be found in the Southern District of Texas for service of process.  In a footnote to the verification and affidavit, Plaintiff indicates that in researching the various entities identified in the complaint, Plaintiff's representative discovered that GCL (who is not a defendant) registered to do business in Texas on March 22, 2012 and designated a manager named Mr. Hong Jia. (D.E. 1-11 at 2, n. 1.)  Based on the complaint and verification, the Court concludes that the Defendants named in this action do not have an agent present within the Southern District of Texas or the minimum contacts necessary to satisfy the requirements for personal jurisdiction.  Accordingly, the Court concludes that Defendants could not be found in the Southern District at the time of the filing of the complaint.

**CONCLUSION**

For the reasons set forth above, Defendants Offshore Heavy Transport AS and OHT Osprey AS's Motion to Dismiss and Motion to Vacate Attachment (D.E. 31) is DENIED, and Defendants HNA Group Co. Ltd., Hong Kong Chain Glory Ltd., and Shanghai Grand China Shipping Development Co. Ltd.'s Motion to Vacate Attachment (D.E. 33) is DENIED.

ORDERED this 5th day of February 2013.

**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**