IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WHITE ROSEBAY SHIPPING S.A. | § | |
| | § | |
| v. | § | C.A. No. C-12-096 |
| | § | |
| HNA GROUP CO., LTD., ET AL. | § | |

**OPINION DENYING DEFENDANTS'
MOTION FOR ENTRY OF CONFIDENTIALITY ORDER**

This is an admiralty action filed pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration by Plaintiff White Rosebay Shipping S.A ("White Rosebay"). (D.E. 1). Pending is a motion for entry of a confidentiality order by Defendants Offshore Heavy Transport AS ("OHT") and OHT Osprey AS ("OHT Osprey"). (D.E. 70). Plaintiff has filed a response in opposition. (D.E. 74). OHT and OHT Osprey filed a reply brief. (D.E. 75). For the following reasons, Defendants' motion is hereby DENIED.

**I. BACKGROUND**

On July 20, 2010, Defendant Hong Kong Chain Glory, Ltd. ("Chain Glory") entered an agreement with Plaintiff to time charter its vessel, the M/V Fortune Plum. (D.E. 1, at 3). The agreement was guaranteed by Defendant Grand China Shipping Development Co., a/k/a Shanghai Grand China Shipping Development Co. ("Grand China"). Id. Both Chain Glory and Grand China are owned by a subsidiary of HNA Group Co. Ltd. ("HNA"), non-party Grand China Logistics Holding (Group) Company Limited ("GC Logistics"), which serves as the holding company through which HNA operates its shipping business. Id. at 2; (D.E. 1-4, at 2). Pursuant to this agreement, Chain Glory was obligated to make charter hire payments each month at the rate of $17,700 per day, beginning on July 23, 2010 when the vessel was delivered

to it. Id. However, in April 2011, Chain Glory began to default on the contract, failing to make installment payments on time or in full. Id. By September 2011, it owed a total of $1,050,711 in back charter hire payments. Id. at 3-4. Shortly thereafter, it stopped making payments altogether. Id. On November 14, 2011, construing Chain Glory's failure to make payments as a constructive repudiation of the charter contract, Plaintiff withdrew the M/V Fortune Plum from Chain Glory's service. Id.

On February 12, 2012, Plaintiff commenced an arbitration proceeding against Chain Glory in London pursuant to the terms of the charter contract. Id. at 5-6; (D.E. 1-2). In order to obtain security for that proceeding, it instituted this action against Chain Glory on March 28, 2012, claiming that Chain Glory and its guarantor, Grand China, breached the charter contract. (D.E. 1, at 2-3). Plaintiff also seeks to hold HNA, the parent company of Chain Glory and Grand China, as well as two other subsidiaries, OHT and OHT Osprey, liable for breach of contract on the basis that an alter ego relationship existed between each of these corporations. Id. at 10-12. Plaintiff simultaneously submitted a motion to seize the M/V Osprey, which was then within this Court's territorial jurisdiction.[1] (D.E. 4). This motion was granted on March 29, 2012, and the vessel was seized. (D.E. 8). OHT posted bond on March 30, 2012, (D.E. 10), and Plaintiff consented to the release of the vessel. (D.E. 22).

Discovery is still ongoing in this action. On February 11, 2013, Defendants OHT and OHT Osprey filed a motion for entry of a confidentiality order on the basis that they may be required to produce confidential documents and information in discovery. Specifically, they argue that discovery may reveal information that is "confidential or of a personal and private

---

[1] OHT Osprey is the sole owner of the M/V Osprey, and OHT is the sole owner of OHT Osprey. (D.E. 31, at 1).

2

nature to Defendants of their employees or former employees," including emails written by M/V Osprey crew members relating to family or medical issues. (D.E. 70, at 2). In addition, they urge that discovery "will likely involve confidential and proprietary information including trade secrets about, among other things, the way the Parties run their business." Id. On February 19, 2013, Plaintiff filed a response in opposition to Defendants' motion, arguing that the requested order is overly broad, vague and conclusory, and that Defendants should be required to demonstrate grounds for sealing each document for which they seek protection. (D.E. 74).

## II. DISCUSSION

**A.     Defendants' Motion For Entry Of Confidentiality Order Is Denied.**

Defendants urge that a blanket confidentiality order be entered to apply to all information and documents generated through discovery that is deemed confidential by any party. (D.E. 70, at 5-10).

Pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, upon motion of a party "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by specifying and limiting the terms of discovery. "'[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" M-I LLC v. Stelly, 733 F. Supp. 2d 759, 801 (S.D. Tex. 2010) (quoting Sanchez v. Property & Cas., No. H-09-1736, 2010 WL 107606, at *1 (S.D. Tex. Jan. 7, 2010) (unpublished)); accord In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam).

Here, Defendants seek a confidentiality order limiting disclosure of "Confidential

Information," which they define in their proposed order as:

> "all information, whether or not embodied in a document or other physical medium, which the Producing Party believes in good faith is confidential, private or personal information relating to, among other things, any one of the Parties, their business or activities, or employees or former employees of one of the Parties, which the Producing Party would not normally reveal to third parties except in confidence, or has undertaken to maintain in confidence."

(D.E. 70-1, at 2). This request is impossibly broad. Defendants have failed to come forward with any specific explanation–let alone one that would rise to the level of good cause–as to why such sweeping restrictions are appropriate. Although they cite concerns about employees' privacy as it relates to email communications sent from the M/V Osprey, it is unclear why it could not seek a protective order as to those specific documents.[2] Indeed, personal emails dealing with matters unrelated to this litigation would not likely be relevant.

In addition, Defendants' vague and conclusory assertion that "discovery ... will likely involve confidential and proprietary information including trade secrets about, among other things, the way the Parties run their business," will not suffice. To the extent they seek to protect their trade secrets, Defendants "'must first establish that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable significant harm.'" M-ILLC, 733 F. Supp. 2d at 801 (quoting Sanchez, 2010 WL

---

[2] In Defendants' reply brief, they assert that "[s]hould the Court deny the entry of the proposed confidentiality order, [they] will be forced to assert objections to potential discovery requests, preserving their argument that the materials are confidential. The Plaintiff presumably will then file a Motion to Compel, requiring the court to rule on the objections, probably after an *in camera* review." (D.E. 75, at 3-4). Following these procedures, they argue, is a waste of judicial resources compared to entering a confidentiality order "that the Parties might be able to agree on." Id. at 4. Although it may be true that an agreed upon confidentiality order would have the benefit of avoiding judicial involvement, Defendants acknowledge that the parties have not come to an agreement. Indeed, they explain that such an agreement was attempted in the early stages of litigation, but failed because the parties disagreed with one another's proposed terms. (D.E. 75, at 2). The Court is not required to compel such an agreement, despite the inevitable commitment of judicial resources that following procedural rules will require.

107606, at *1).  Then, once they have met this burden, it is up to the opposing party to show that the information is sufficiently "'relevant and necessary'" to nevertheless warrant disclosure.  Id. at 802 (quotation omitted).  Here, Defendants have not established that any information sought by Plaintiff constitutes a trade secret, nor have they pointed to any identifiable harm that would result from disclosure.  (D.E. 70, at 2).  Accordingly, Defendants are not entitled to entry of a confidentiality order.

### III.  CONCLUSION

Because Defendants have failed to show good cause as to why a confidentiality order should be entered, their motion, (D.E. 70), is hereby DENIED without prejudice.

ORDERED this 25th day of February 2013.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE